**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CHRIS B. WOODS,                    ) Case No. EDCV 14-1014-JPR
                                   )
                    Plaintiff,     )
                                   )
          vs.                      ) **MEMORANDUM OPINION AND ORDER**
                                   ) **AFFIRMING COMMISSIONER**
CAROLYN W. COLVIN, Acting          )
Commissioner of Social             )
Security,                          )
                                   )
                    Defendant.     )
_____    )

**I.    PROCEEDINGS**

     Plaintiff seeks review of the Commissioner's final decision
denying his application for Social Security disability insurance
benefits ("DIB").  The parties consented to the jurisdiction of
the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c).
This matter is before the Court on the parties' Joint
Stipulation, filed February 17, 2015, which the Court has taken
under submission without oral argument.  For the reasons stated
below, the Commissioner's decision is affirmed.

1

**II.   BACKGROUND**

Plaintiff was born on August 4, 1967.  (Administrative Record ("AR") 145.)  He completed the 12th grade and worked as an actor.  (AR 250.)

On May 13, 2011, Plaintiff submitted an application for DIB. (AR 53, 145-46.)  He alleged that he had been disabled since May 15, 2009, because of "aids," "Bi-Polar Disorder/Schizophrenia," depression, and anxiety.  (AR 249.)  After Plaintiff's application was denied, he requested a hearing before an Administrative Law Judge.  (AR 84-85.)  A hearing was held on October 26, 2012, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert.  (AR 28-52.)  At the hearing, Plaintiff amended his onset date to July 6, 2010. (AR 45.)  In a written decision issued October 30, 2012, the ALJ found Plaintiff not disabled.  (AR 11-22.)  On March 21, 2014, the Appeals Council denied Plaintiff's request for review.  (AR 1-5.)  This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance.

2

1  <u>Lingenfelter</u>, 504 F.3d at 1035 (citing <u>Robbins v. Soc. Sec.</u>
2  <u>Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006)).   To determine whether
3  substantial evidence supports a finding, the reviewing court
4  "must review the administrative record as a whole, weighing both
5  the evidence that supports and the evidence that detracts from
6  the Commissioner's conclusion."  <u>Reddick v. Chater</u>, 157 F.3d 715,
7  720 (9th Cir. 1996).  "If the evidence can reasonably support
8  either affirming or reversing," the reviewing court "may not
9  substitute its judgment" for that of the Commissioner.  <u>Id.</u> at
10 720-21.

11 **IV.  THE EVALUATION OF DISABILITY**

12     People are "disabled" for purposes of receiving Social
13 Security benefits if they are unable to engage in any substantial
14 gainful activity owing to a physical or mental impairment that is
15 expected to result in death or has lasted, or is expected to
16 last, for a continuous period of at least 12 months.  42 U.S.C.
17 § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir.
18 1992).

19     A.   The Five-Step Evaluation Process

20     The ALJ follows a five-step sequential evaluation process to
21 assess whether a claimant is disabled.  20 C.F.R
22 § 404.1520(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th
23 Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the
24 Commissioner must determine whether the claimant is currently
25 engaged in substantial gainful activity; if so, the claimant is
26 not disabled and the claim must be denied.  § 404.1520(a)(4)(i).

27     If the claimant is not engaged in substantial gainful
28 activity, the second step requires the Commissioner to determine

whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied.  § 404.1520(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. § 404.1520(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform his past work; if so, the claimant is not disabled and the claim must be denied.  § 404.1520(a)(4)(iv).  The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established.  Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. § 404.1520(a)(4)(v); Drouin, 966 F.2d at 1257.  That

---

[1] RFC is what a claimant can do despite existing exertional and nonexertional limitations.  § 404.1545; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

1  determination comprises the fifth and final step in the

2  sequential analysis.  § 404.1520(a)(4); <u>Lester</u>, 81 F.3d at 828

3  n.5; <u>Drouin</u>, 966 F.2d at 1257.

4      B.    The ALJ's Application of the Five-Step Process

5      At step one, the ALJ found that Plaintiff had not engaged in

6  substantial gainful activity since July 6, 2010, the amended

7  alleged onset date.  (AR 13.)  At step two, he concluded that

8  Plaintiff had severe impairments of bipolar disorder, psychosis

9  disorder, and generalized anxiety disorder with panic attacks.

10  (<u>Id.</u>)  At step three, the ALJ determined that Plaintiff's

11  impairments did not meet or equal any of the impairments in the

12  Listing.  (AR 14.)  At step four, he found that Plaintiff had the

13  RFC to perform

14      a full range of work at all exertional levels but with

15      the following nonexertional limitations: [he] can perform

16      simple tasks; [he] is limited to non-stressful work; [he]

17      cannot perform fast-paced work; [and he] must work in a

18      quiet and calm work environment that is nonpublic with

19      only non-stressful interaction with coworkers.

20  (AR 15-16.)  Based on the VE's testimony, the ALJ concluded that

21  Plaintiff could not perform his past relevant work as an actor.

22  (AR 20.)  At step five, the ALJ found that Plaintiff could

23  perform jobs that existed in significant numbers in the national

24  economy.  (AR 21-22.)  Accordingly, the ALJ found him not

25  disabled.  (AR 22.)

26

27

28

**V.   DISCUSSION**

The ALJ Properly Considered the Treating Psychiatrist's Opinion

Plaintiff contends that the ALJ erred in assessing the opinion of one of his treating psychiatrists, Dr. Richard Torban. (J. Stip. at 4-9, 15-16.)  For the reasons discussed below, remand is not warranted.

A.   Applicable Law

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did neither.  Lester, 81 F.3d at 830.  A treating physician's opinion is generally entitled to more weight than that of an examining physician, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician.  Id.

This is true because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant.  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it should be given controlling weight.  § 404.1527(c)(2). If a treating physician's opinion is not given controlling weight, its weight is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, amount of evidence supporting the opinion, consistency with the record as a whole, the doctor's area of specialization, and other factors.  § 404.1527(c)(2)-(6).

When a treating or examining physician's opinion is not contradicted by other evidence in the record, it may be rejected only for "clear and convincing" reasons.  See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting Lester, 81 F.3d at 830-31).  When a treating or examining physician's opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it.  Id. (quoting Lester, 81 F.3d at 830-31).  The weight given an examining physician's opinion, moreover, depends on whether it is consistent with the record and accompanied by adequate explanation, among other things.  § 404.1527(c)(3)-(6).  Furthermore, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).

     B.   Relevant Background

On July 19, 2011, psychologist Ralph Robinowitz, Ph.D., reviewed Plaintiff's medical records and completed psychiatric-review-technique ("PRT") and mental-RFC-assessment forms.[2]  (AR 770-83.)  In the PRT form, Dr. Robinowitz opined that Plaintiff suffered from depressive disorder (AR 773) that resulted in mild restriction of activities of daily living; moderate difficulties

_____

[2] Dr. Robinowitz's electronic signature includes a medical specialty code of 38, indicating psychology.  (AR 770); see Program Operations Manual System (POMS) DI 24501.004, U.S. Soc. Sec. Admin. (May 5, 2015), http://policy.ssa.gov/poms.nsf/lnx/ 0424501004.

in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and one or two episodes of decompensation (AR 778).  In the mental-RFC assessment, Dr. Robinowitz opined that Plaintiff was not significantly limited in his ability to remember locations and worklike procedures; understand, remember, and carry out very short and simple instructions; make simple work-related decisions; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; travel in unfamiliar places and use public transportation; or set realistic goals and make plans independently of others.  (AR 781-82.)

Dr. Robinowitz believed that Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance and be punctual; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; get along with coworkers; maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness; and respond appropriately to changes in the work setting.  (_Id._)  Plaintiff was not markedly limited in any category.  (_Id._)  Dr. Robinowitz briefly summarized Plaintiff's medical history and opined that he "[s]hould be capable of simple

8

tasks with normal supervision" but was "limited in completion of more detailed multistep tasks." (AR 783.)

On December 9, 2011, Dr. Sidney Gold, who specialized in psychiatry, reviewed the record evidence and affirmed Dr. Robinowitz's opinion that Plaintiff was "capable of SRT," or simple, repetitive tasks.[3] (AR 61-62.)

On August 29, 2012, Dr. Torban, who was board certified in psychiatry, wrote a note "[t]o whom it may concern," stating that Plaintiff was under his psychiatric care and had diagnoses of bipolar disorder, psychotic disorder not otherwise specified, generalized anxiety, and panic attacks. (AR 938.) Dr. Torban wrote, "I believe that he's disabled [and] cannot work." (Id.) Dr. Torban completed a treatment note that same day, stating that Plaintiff had intact judgment and insight, normal "rate of thoughts," logical thought content, normal mood, appropriate affect, normal "associations," and no hallucinations, delusions, psychotic thoughts, homicidal ideation, or suicidal ideation. (AR 950.) Dr. Torban noted that Plaintiff "continues to struggle" and was "out of funds and ha[d] an appeal hearing" for disability benefits. (Id.) He noted that Plaintiff "cannot work." (Id.) "Because of this and other issues," Dr. Torban wrote, Plaintiff was "having frequent panic attacks," although

---

[3] Dr. Gold's electronic signature includes a medical specialty code of 37, indicating psychiatry. (AR 67); see Program Operations Manual System (POMS) DI 24501.004, U.S. Soc. Sec. Admin. (May 5, 2015), http://policy.ssa.gov/poms.nsf/lnx/0424501004.

Plaintiff also reported that "Clonazepam[4] is helpful for this."
(Id.)  Dr. Torban noted that Plaintiff was not then experiencing
auditory hallucinations, but he "did experience these earlier in
[the] week and they were very loud"; Plaintiff "took an extra
Risperdal[5] and this helped."  (Id.)  Plaintiff reported that
"[g]enerally," his dosage of Risperdal was "helpful" and didn't
need to be increased.  (Id.)  Plaintiff also reported "some
dysphoria"[6] but felt that "Citalopram and Wellbutrin are
helpful."[7]  (Id.)  At the end of the note, Dr. Torban again
stated that Plaintiff was "[s]truggling" and was "[c]oncerned
about disability and having no funds."  (Id.)

In his October 30, 2012 decision, the ALJ accorded "great
weight" to Drs. Robinowitz's and Gold's opinions that Plaintiff
"could perform simple tasks with normal supervision and was

---

[4] Clonazepam is a benzodiazepine used to relieve panic
attacks.  Clonazepam, MedlinePlus, http://www.nlm.nih.gov/
medlineplus/druginfo/meds/a682279.html (last updated July 1,
2010).

[5] Risperdal, which is a brand name for the generic
medication risperidone, is an atypical antipsychotic used to
treat schizophrenia and bipolar disorder.  Risperidone,
MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/
a694015.html (last updated Nov. 15, 2012).

[6] Dysphoria is "a state of feeling unwell or unhappy."
Dysphoria, Merriam-Webster, http://www.merriam-webster.com/
dictionary/dysphoria (last accessed June 8, 2015).

[7] Citalopram is a selective-serotonin-reuptake inhibitor
used to treat depression.  Citalopram, MedlinePlus,
http://www.nlm.nih.gov/medlineplus/druginfo/meds/a699001.html
(last updated Nov. 15, 2014).  Wellbutrin, which is a brand name
for the generic medication bupropion, is also an antidepressant.
Bupropion, MedlinePlus, http://www.nlm.nih.gov/medlineplus/
druginfo/meds/a695033.html (last updated Sept. 15, 2014).

10

limited in completion of more detailed multistep tasks," finding

that their opinions were consistent with the medical evidence.

(AR 19-20.)  The ALJ considered Dr. Torban's opinion but accorded

it "little weight" and "no probative value" because it was

"conclusory and inadequately supported by clinical findings,"

among other reasons.  (AR 20.)  Based in part on Plaintiff's

testimony regarding his anxiety and panic attacks (id.), the ALJ

concluded that Plaintiff was limited to performing "simple tasks"

and "non-stressful work"; he could not perform "fast-paced work,"

and he must work "in a quiet and calm work environment that is

nonpublic with only non-stressful interaction with coworkers."

(AR 15-16.)

C.   Analysis

The ALJ did not err in assessing the medical evidence.  As

an initial matter, the ALJ correctly found that Dr. Torban's

opinion that Plaintiff was "disabled [and] cannot work" (AR 938)

concerned an issue "reserved to the Commissioner" and was thus

not entitled to controlling weight or "special significance"

under 20 C.F.R. § 404.1527(e) and SSR 96-5.  (See AR 20);

§ 404.1527(d)(1) (stating that "we review all of the medical

findings and other evidence that support a medical source's

statement that you are disabled" but that "[a] statement by a

medical source that you are 'disabled' or 'unable to work' does

not mean that we will determine that you are disabled"); SSR

96-5p, 1996 WL 374183, at *2 (July 2, 1996) (noting that although

ALJ must carefully consider medical-source opinions about issues

reserved to the Commissioner, "treating source opinions on issues

that are reserved to the Commissioner are never entitled to

controlling weight or special significance"). Indeed, as the ALJ
noted, Dr. Torban "did not provide an explanation for this
assessment or any specific functional limitations that prevented
[Plaintiff] from working." (AR 20.) As such, it was not binding
on the ALJ or entitled to any special weight. See Boardman v.
Astrue, 286 F. App'x 397, 399 (9th Cir. 2008).

Plaintiff acknowledges that the ALJ "must never credit an
opinion that an individual is disabled" but argues that the ALJ's
"observation that Dr. Torban's opinion does not have any
probative value is error of law" because "the ALJ still must
consider such opinions, and cannot reject them unless [he]
articulates specific and legitimate reasons." (J. Stip. at 5.)
But nothing indicates that the ALJ found that Dr. Torban's
opinion had "no probative value" solely because it was regarding
an issue reserved to the Commissioner; indeed, he gave other
reasons for rejecting it in the same paragraph. (See AR 20.) In
any event, even if the ALJ had somehow misstated the law, it was
harmless because, as discussed below, he gave other specific and
legitimate reasons for rejecting Dr. Torban's opinion. (Id.);
see Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th
Cir. 2006) (nonprejudicial or irrelevant mistakes are harmless).

First, the ALJ found that Dr. Torban's opinion was
"conclusory and inadequately supported by clinical findings."
(AR 20.) Indeed, Dr. Torban's brief, one-page note is devoid of
any objective findings or specific functional limitations; he
simply listed Plaintiff's diagnoses and concluded that Plaintiff
was "disabled" and could not work. (AR 938.) The ALJ was
therefore permitted to reject the opinion on that basis. See

Thomas, 278 F.3d at 957; Batson, 359 F.3d at 1195.

Second, the ALJ found that Dr. Torban's opinion was "inconsistent with [his] own treatment records that document normal mental status examinations, including intact judgment and insight, normal thought process, normal mood, appropriate affect, normal associations and no hallucinations." (AR 20.) Indeed, Dr. Torban's notes, which the ALJ summarized in his opinion (see AR 19), show that at Plaintiff's initial psychiatric evaluation, in February 2012, Dr. Torban examined Plaintiff and found that his mood was depressed and anxious but his appearance was neat, clean, and well developed; his behavior was cooperative and talkative; and his affect was "broad,"[8] appropriate, and "mood congruent." (AR 948.) Plaintiff was alert, oriented, and attentive and had average insight and judgment, "tight" associations, good impulse control, normal speech, intact memory function, average intellectual functioning, and no psychosis. (Id.) In March 2012, Dr. Torban found that Plaintiff had intact judgment and insight, normal rate of thoughts, logical thought content, normal abstract reasoning, intact computation "for basic mathematical constructs including addition and subtraction," normal mood, appropriate affect, normal associations, and no hallucinations, delusions, or psychotic thoughts. (AR 988.) In June 2012, Dr. Torban found that Plaintiff had intact judgment

---

[8] "A person's affect is the expression of emotion or feelings displayed to others through facial expressions, hand gestures, voice tone, and other emotional signs such as laughter or tears." See Affect, Encyclopedia of Mental Disorders, http://www.minddisorders.com/A-Br/Affect.html (last accessed June 9, 2015). A normal affect is also called a "broad affect." Id.

1    and insight, normal rate of thought, logical thought content,

2    normal abstract reasoning, intact computation "for basic

3    mathematical constructs including addition and subtraction,"

4    normal mood, appropriate affect, normal associations, and no

5    hallucinations, delusions, or psychotic thoughts.  (AR 956.)  And

6    in August 2012, Dr. Torban found that Plaintiff had intact

7    insight and judgment, normal rate of thoughts, normal thought

8    content, normal mood, appropriate affect, normal "associations,"

9    and no hallucinations, delusions, psychotic thoughts, or

10   homicidal or suicidal ideation.  (AR 950; see also AR 957, 963

11   (similar findings in May & June 2012 notes by Jean I. Davis,

12   Ph.D., in Dr. Torban's office).)  Such unremarkable examination

13   findings contradict Dr. Torban's conclusion that Plaintiff was

14   totally disabled by his psychological impairments, and the ALJ

15   was entitled to discount his opinion on that basis.  See

16   Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692–93 (9th

17   Cir. 2009) (contradiction between treating physician's opinion

18   and his treatment notes constitutes specific and legitimate

19   reason for rejecting opinion); Houghton v. Comm'r Soc. Sec.

20   Admin., 493 F. App'x 843, 845 (9th Cir. 2012) (holding that ALJ's

21   finding that doctors' opinions were "internally inconsistent,

22   unsupported by their own treatment records or clinical findings,

23   [and] inconsistent with the record as a whole" constituted

24   specific and legitimate bases for discounting them).[9]

25

26           [9] To the extent Plaintiff contends that the ALJ erred by
     failing to contact Dr. Torban for clarification of his opinion
27   (J. Stip. at 5), that argument fails.  "The duty to re-contact a
     treating physician is only triggered when the evidence received
28   from the physician is inadequate for the Commissioner to

                                14

1    Plaintiff nevertheless contends that the ALJ "ignored" Dr.
2   Torban's "abnormal" mental-status-examination findings, citing
3   his February 2012 finding that Plaintiff was "talkative," with a
4   broad affect and "depressed and anxious" mood.[10]  (J. Stip. at 6
5   (citing AR 948).)  Specifically, Plaintiff argues that Dr.
6   Torban's "talkative" finding "correspond[ed] with his diagnosis
7   of mania from [Plaintiff's] bipolar disorder as well as
8   generalized anxiety disorder," and his finding of a broad affect
9   was "consistent with the manic symptoms associated with bipolar
10  disorder."  (Id.)  As an initial matter, however, it appears that
11  a "broad" affect is in fact a normal range of affect and
12  therefore does not show that Plaintiff suffered from "manic
13  symptoms."  (See AR 948 (listing other choices under "affect" on
14  check-box form, including dysthymic, constricted, flat/blunted,
15  tearful, bright, angry, depressed, anxious, irritable, and
16  labile, none of which were checked)); see also Affect,
17  Encyclopedia of Mental Disorders, http://www.
18  minddisorders.com/A-Br/Affect.html (last accessed June 9, 2015)
19
20
21  _____

22  determine whether the claimant is disabled."  Brinegar v. Astrue,
    337 F. App'x 711, 712 (9th Cir. 2009) (alterations and internal
23  quotation marks omitted); accord Bayliss v. Barnhart, 427 F.3d
    1211, 1217 (9th Cir. 2005).  Here, the record was adequate to
24  enable the ALJ to determine that Plaintiff was not disabled.

25
26      [10] Plaintiff contends that Dr. Torban found that Plaintiff
    had a "depressed and anxious affect" (J. Stip. at 6), but Dr.
27  Torban actually found that Plaintiff had a depressed and anxious
    mood and did not check "depressed" or "anxious" under the section
28  on the form for indicating Plaintiff's affect (AR 948).

(stating that "broad affect" is normal).[11]  But in any event, the cited findings still fail to support Dr. Torban's opinion that Plaintiff was totally disabled and unable to work, particularly in light of the doctor's other consistently normal mental-status-examination results.  The ALJ, moreover, summarized most of the cited findings (see AR 19 (noting February 2012 findings of "broad affect" and "depressed and anxious mood")), found that Plaintiff's severe impairments included bipolar disorder, psychosis disorder, and generalized anxiety disorder with panic attacks (AR 13), and largely accommodated Plaintiff's complaints of depression and anxiety by formulating an RFC for simple, nonstressful, nonpublic work in a quiet and calm environment (AR 15-16, 20).

Plaintiff also argues that although "other mental status examinations have yielded normal findings," they "do not reflect the complete picture" because he "suffers from impairments that are episodic in nature, to wit, panic disorder and bipolar disorder." (J. Stip. at 6.)  In support, Plaintiff cites Dr. Torban's August 2012 treatment record, which reflects normal mental-status-examination findings but also notes that Plaintiff "continue[d] to struggle" and was having "frequent panic attacks."  (Id. (citing AR 950).)  But as Plaintiff acknowledges (id.), it appears that his anxiety was due at least in part to his financial difficulties rather than his mental impairments

---

[11] Plaintiff's argument concerning Dr. Torban's "talkative" finding (J. Stip. at 6) is also unpersuasive given that the form listed several choices – such as excited, fidgety, agitated, and dramatic – that would likely have been checked if Plaintiff were manic but were not (see AR 948).

(see AR 950 (noting that Plaintiff "is out of funds and has an appeal hearing . . . for disability" and was "[s]truggling" and "[c]oncerned about disability and having no funds").)   Moreover, despite Plaintiff's reported symptoms, Dr. Torban's psychiatric-examination findings were completely normal, and he noted Plaintiff's report that his medications helped control his psychiatric symptoms.   (See AR 950; see also AR 988 (Mar. 2012, Plaintiff reporting that "he's doing better overall" and medications helpful), 956 (June 2012, Plaintiff reporting that medication helpful).)   As such, the ALJ did not err in finding that Dr. Torban's treatment notes, which consistently reflected normal mental-status-examination findings, contradicted his opinion that Plaintiff was totally disabled by his psychological impairments.

Plaintiff also argues that Dr. Torban's opinion is supported by the notes of another of Plaintiff's treating physicians, Dr. Joel Morris.   (J. Stip at 7.)   But although Dr. Morris's notes show that Plaintiff was anxious and depressed, they also indicate that Plaintiff was consistently well groomed, with "average" demeanor, eye contact, and activity; clear speech; logical thought process; cooperative behavior; unimpaired cognition; average intelligence; appropriate insight and judgment; and no delusions or hallucinations.[12]   Dr. Morris also frequently noted

---

[12] See AR 546 (undated note showing that Plaintiff had "high levels of anxiety," dramatic affect, and depression but was oriented, with good judgment and insight and without hallucinations, delusions, or suicidal or homicidal ideations), 601-02 (Dec. 2010, noting that Plaintiff had anxious and dysthymic mood and constricted affect but was well groomed, with

Plaintiff's own reports of improvement and effective medication.
(See AR 593-94 (Jan. 2011, Plaintiff reported that mood was
"improved" and anxiety "down" and he had "improved on the present
regimen of meds"), 591-92 (Feb. 2011, Plaintiff reported "feeling
better sigficantly [sic]" and less worried on a higher dose of
Celexa,[13] although he was "very concerned about his situation
after his unemployment runs out in several months" and remained
anxious), 589-90 (Mar. 2011, Plaintiff believed he was unable to
work and was feeling overwhelmed but reported mood was "improved"
and medication working), 584-85 (Apr. 2011, Plaintiff "[f]eeling
better" but frightened of having "breakdown," was "highly anxious

---

average demeanor, eye contact, and activity; clear speech;
logical thought process; cooperative behavior; unimpaired
cognition; average intelligence; appropriate insight and
judgment; and no delusions or hallucinations), 593-94 (Jan. 2011,
noting that Plaintiff had an anxious mood but was well groomed,
with average demeanor, eye contact, and activity; clear speech;
logical thought process; "full" affect; cooperative behavior;
appropriate insight and judgment; and no delusions or
hallucinations), 591-92 (Feb. 2011, finding that Plaintiff had
anxious mood and constricted affect but was well groomed, with
average demeanor, eye contact, and activity; clear speech;
logical thought process; cooperative behavior; and no delusions
or hallucinations), 589-90 (Mar. 2011, finding that Plaintiff had
constricted affect and anxious, dysthymic mood but was well
groomed, with "average" demeanor, eye contact, and activity;
clear speech; no delusions or hallucinations; logical thought
process; cooperative behavior, average intelligence; appropriate
insight and judgment; and no cognitive impairment), 584-85 (Apr.
2011, Plaintiff was anxious but well groomed, with average
demeanor, eye contact, and activity; clear speech; no delusions
or hallucinations; logical thought process; cooperative behavior;
average intelligence; no cognitive impairment; and appropriate
insight and judgment).

[13] Celexa, or citalopram, is a selective-serotonin-reuptake
inhibitor used to treat depression. Citalopram, MedlinePlus,
http://www.nlm.nih.gov/medlineplus/druginfo/meds/a699001.html
(last updated Nov. 15, 2014).

at times" but had "improved in his mood").)  Dr. Morris's
findings – which the ALJ summarized in his decision (AR 18) and
accommodated with an RFC for only simple, nonstressful, and
nonpublic work (AR 15-16) – fail to support Dr. Torban's
conclusory opinion that Plaintiff was totally disabled and unable
to work.  Indeed, Dr. Morris himself seemed to believe Plaintiff
was not disabled, as he recommended that Plaintiff begin doing
"volunteer work" to provide "external structure and support."
(AR 546; see also AR 592 (stating that Plaintiff "needs to become
engaged in positive experiences, i.e. volunteering, since he has
an external locus of control").)

    Plaintiff contends that Dr. Torban's opinion was supported
by various providers' findings that he had Global Assessment of
Functioning ("GAF") scores of 50, indicating "serious
symptoms."[14]  (J. Stip. at 7-8); see Diagnostic and Statistical
Manual of Mental Disorders 34 (revised 4th ed. 2000).  But as
Plaintiff acknowledges (J. Stip at 7), the Commissioner has
declined to endorse GAF scores, see Revised Medical Criteria for
Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.
Reg. 50764-65 (Aug. 21, 2000) (codified at 20 C.F.R. pts. 404 &
416) (GAF score "does not have a direct correlation to the
severity requirements in our mental disorders listings").
Indeed, the most recent edition of the Diagnostic and Statistical
Manual of Mental Disorders "dropped" the GAF scale, citing its

_____

[14] Previous editions of the Diagnostic and Statistical
Manual of Disorders stated that a GAF score represents a rating
of overall psychological functioning on a scale of 0 to 100.
See, e.g., Diagnostic and Statistical Manual of Disorders 34
(revised 4th ed. 2000).

lack of conceptual clarity and questionable psychological measurements in practice. Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2012). As such, Plaintiff's GAF scores do not establish that remand is warranted. See Pinegar v. Comm'r of Soc. Sec. Admin., 499 F. App'x 666, 667 (9th Cir. 2012) (ALJ does not err by not considering claimant's GAF scores).

Finally, the ALJ was entitled to rely on Drs. Robinowitz's and Gold's opinions in rejecting Dr. Torban's opinion. Dr. Robinowitz specialized in psychology and Dr. Gold specialized in psychiatry, and both doctors reviewed Plaintiff's medical records before rendering their opinions. See § 404.1527(c)(5) (ALJ will "generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty"); § 404.1527(c)(3) (in weighing medical opinions, ALJ "will evaluate the degree to which these opinions consider all of the pertinent evidence in [claimant's] claim, including opinions of treating and other examining sources"). Plaintiff does not point to any change in the severity of his impairments occurring after the doctors reviewed his records. And as state-agency consulting physicians, Drs. Robinowitz and Gold both had expertise in Social Security disability programs. § 404.1527(c)(6) (medical source's "amount of understanding of our disability programs and their evidentiary requirements" is "relevant factor[]" in determining weight to be accorded opinion); § 404.1527(e)(2)(i) ("State agency medical and psychological consultants . . . are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation."). Moreover, as the ALJ found, their opinions were

"consistent with the objective medical evidence" and with
Plaintiff's "medical record as a whole, which reveals a
conservative course of mental health treatment."  (AR 20);
Thomas, 278 F.3d at 957 ("The opinions of non-treating or
non-examining physicians may also serve as substantial evidence
when the opinions are consistent with independent clinical
findings or other evidence in the record." (citation omitted)).

     Plaintiff nevertheless contends that Drs. Robinowitz's and
Gold's opinions "were not enough to override the opinions of Dr.
Torban" because they relied on "the same mental status
examination findings that the treating psychiatrists have relied
upon" and not on any "independent, clinical findings."  (J. Stip.
at 8 (citing Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).)
In fact, a nonexamining physician's opinions may serve as
substantial evidence when they are consistent with independent
clinical findings or "other evidence in the record."  Thomas, 278
F.3d at 957.  Here the nonexamining doctors reviewed Plaintiff's
medical records, including Dr. Morris's notes (see AR 783 (Dr.
Robinowitz's brief summary of medical records, including Dr.
Morris's June 8, 2011 note (AR 690-91); AR 58-62 (Dr. Gold's
opinion listing medical evidence)), whereas it appears that Dr.
Torban relied only on his own clinical findings.  And as the ALJ
found (AR 20), Drs. Robinowitz's and Gold's opinions were
consistent with the overall medical record, which often reflected
normal or nearly normal mental-status examinations and
Plaintiff's improvement with medication.  To the extent Plaintiff
argues that the ALJ erred because the opinions of nonexamining
physicians, alone, are not enough to refute a treating

21

physician's opinion (J. Stip. at 8), that argument fails because here the ALJ provided other specific and legitimate reasons for rejecting Dr. Torban's opinion, including that it was conclusory and conflicted with his treatment notes (AR 20).  See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (holding that ALJ may reject "the opinion of a treating or examining physician, based in part on the testimony of a nontreating, nonexamining medical advisor" (emphasis in original, citations omitted)).

In sum, Plaintiff has shown, at most, that the evidence before the ALJ could have been interpreted differently, which is insufficient to warrant reversal.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." (citation omitted)).  Plaintiff therefore is not entitled to remand.

## VI.   CONCLUSION

Consistent with the foregoing, and under sentence four of 42 U.S.C. § 405(g),[15] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner, DENYING Plaintiff's request for remand, and DISMISSING this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.


DATED: June 17, 2015

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[15] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

23